UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. |
| | ) | |
| Six Hundred Ninety Five Dollars ($695.00) in U.S. | ) | JURY TRIAL REQUESTED |
| Currency, more or less, seized from Phat Stuff, | ) | |
| Keene, New Hampshire; | ) | |
| | ) | |
| Funds in the amount of $3,737.23, seized from | ) | |
| TD Bank Business Core Checking Account | ) | |
| No. 9240737655, in the name of Phat Stuff: | ) | |
| | ) | |
| Funds in the amount of $906.78, seized from | ) | |
| TD Bank Business Convenience Checking | ) | |
| Account No. 9244068759, in the name of | ) | |
| Phat Stuff; | ) | |
| | ) | |
| Funds in the amount of $9,871.00, seized from | ) | |
| TD Bank Savings Account No. 9734334339, | ) | |
| in the name of Panagiotes J. Eliopoulos; | ) | |
| | ) | |
| One 2011 Ford F 250, NH Registration #2977098, | ) | |
| Vin #1FT7W2B68BEA60933, registered to | ) | |
| Panagiotes and Katie Eliopoulos; | ) | |
| | ) | |
| One lot of forty two boxes of assorted glass bongs, | ) | |
| seized from Phat Stuff, Keene, New Hampshire; | ) | |
| | ) | |
| One lot of twelve boxes of assorted glass water | ) | |
| pipes, seized from Phat Stuff, Keene, New | ) | |
| Hampshire; | ) | |
| | ) | |
| One lot of twenty one boxes of assorted glass | ) | |
| carburetor pipes, seized from Phat Stuff, Keene, | ) | |
| New Hampshire; | ) | |
| | ) | |
| One box of assorted carburetor pipes, seized from | ) | |
| Phat Stuff, Keene, New Hampshire; | ) | |
| | ) | |
| One lot of four boxes of assorted glass pipes, | ) | |
| seized from Phat Stuff, Keene, New Hampshire; | ) | |

One box of assorted grinders, with screens, seized )
from Phat Stuff, Keene, New Hampshire; )
)
One lot of two boxes of assorted rolling papers, )
seized from Phat Stuff, Keene, New Hampshire; )
)
One lot of four boxes of assorted grinders, seized )
from Phat Stuff, Keene, New Hampshire; )
)
One lot of four boxes of assorted glassware, seized )
from Phat Stuff, Keene, New Hampshire; )
)
One lot of fifteen boxes of assorted hookah pipes, )
seized from Phat Stuff, Keene, New Hampshire; )
)
One lot of two boxes of assorted vaporizers, )
seized from Phat Stuff, Keene, New Hampshire; )
)
One box of assorted diversion safes, seized from )
Phat Stuff, Keene, New Hampshire; )
)
One box of assorted pipes and digital scales, )
seized from Phat Stuff, Keene, New Hampshire; )
)
One box of assorted glass pipes and metal )
chamber pipes, seized from Phat Stuff, Keene, )
New Hampshire; )
)
One box of assorted diversion hides and stone )
pipes seized from Phat Stuff, Keene, )
New Hampshire; )
)
One box of assorted glass mouth pieces, seized )
from Phat Stuff, Keene, New Hampshire; )
)
One box of assorted glass mouth pieces, glassware, )
and electronic cigarettes, seized from Phat Stuff, )
Keene, New Hampshire; )
)
One box of assorted ceramic bongs, seized from )
Phat Stuff, Keene, New Hampshire; )
)
One box of assorted glass chillums, seized from )
Phat Stuff, Keene, New Hampshire; )
)

2

One box of assorted chillums, seized from )
Phat Stuff, Keene, New Hampshire; )
)
One box of assorted carburetor pipes and a )
carburetor mask, seized from Phat Stuff, )
Keene, New Hampshire; )
)
One lot of two boxes of assorted ceramic pipes, )
seized from Phat Stuff, Keene, New Hampshire; )
)
One box of containers of 420 cleaner, seized from )
Phat Stuff, Keene, New Hampshire; )
)
One box of assorted carburetor masks, seized from )
Phat Stuff, Keene, New Hampshire; )
)
Defendants *in rem.* )
_____)

## VERIFIED COMPLAINT FOR FORFEITURE IN REM
## FOR PROPERTY WITHIN THE UNITED STATES' POSSESSION, CUSTODY
## OR CONTROL PURSUANT TO SUPPLEMENTAL RULE G

Plaintiff, United States of America, brings this complaint, in accord with Rule G(2) of the

Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions,

and alleges as follows:

### NATURE OF THE ACTION

This is an action to forfeit and condemn to the use and benefit of the United States of

America the above captioned defendants *in rem* for violations of 21 U.S.C. § 881(a)(6) and (10),

which are already within the United States' possession.

### JURISDICTION AND VENUE

The United States brings this action *in rem* in its own right to forfeit and condemn the

defendant properties pursuant to 21 U.S.C. § 881.  The Court has jurisdiction over this action

pursuant to 21 U.S.C. §§ 1345 & 1355.  Venue is proper in this district pursuant to 28 U.S.C.

§§ 1395 and 1355(b)(1)(A) and (B).

## THE DEFENDANTS *IN REM*

The defendants *in rem* consist of the following properties:  (1) Six Hundred Ninety Five Dollars ($695.00) in U.S. Currency, more or less, seized from Phat Stuff, Keene, New Hampshire; (2) Funds in the amount of $3,737.23, seized from TD Bank Business Core Checking Account No. 9240737655, in the name of Phat Stuff; (3) Funds in the amount of $906.78, seized from TD Bank Business Convenience Checking  Account No. 9244068759, in the name of Phat Stuff; (4) Funds in the amount of $9,871.00, seized from TD Bank Savings Account No. 9734334339, in the name of Panagiotes J. Eliopoulos; (5) One 2011 Ford F 250, NH Registration #2977098, Vin #1FT7W2B68BEA60933, registered to Panagiotes and Katie Eliopoulos; (6) One lot of forty two boxes of assorted glass bongs, seized from Phat Stuff, Keene, New Hampshire; (7) One lot of twelve boxes of assorted glass water pipes, seized from Phat Stuff, Keene, New Hampshire; (8) One lot of twenty one boxes of assorted glass carburetor pipes, seized from Phat Stuff, Keene, New Hampshire; (9) One box of assorted carburetor pipes, seized from Phat Stuff, Keene, New Hampshire; (10) One lot of four boxes of assorted glass pipes, seized from Phat Stuff, Keene, New Hampshire; (11) One box of assorted grinders, with screens, seized from Phat Stuff, Keene, New Hampshire; (12) One lot of two boxes of assorted rolling papers, seized from Phat Stuff, Keene, New Hampshire; (13) One lot of four boxes of assorted grinders, seized from Phat Stuff, Keene, New Hampshire; (14) One lot of four boxes of assorted glassware, seized from Phat Stuff, Keene, New Hampshire; (15) One lot of fifteen boxes of assorted hookah pipes, seized from Phat Stuff, Keene, New Hampshire; (16) One lot of two boxes of assorted vaporizers, seized from Phat Stuff, Keene, New Hampshire; (17) One box of assorted diversion safes, seized from Phat Stuff, Keene, New Hampshire; (18) One box of assorted pipes and digital scales, seized from Phat Stuff, Keene, New Hampshire; (19) One box

of assorted glass pipes and metal chamber pipes, seized from Phat Stuff, Keene, New Hampshire; (20) One box of assorted diversion hides and stone pipes seized from Phat Stuff, Keene, New Hampshire; (21) One box of assorted glass mouth pieces, seized from Phat Stuff, Keene, New Hampshire; (22) One box of assorted glass mouth pieces, glassware, and electronic cigarettes, seized from Phat Stuff, Keene, New Hampshire; (23) One box of assorted ceramic bongs, seized from Phat Stuff, Keene, New Hampshire; (24) One box of assorted glass chillums, seized from Phat Stuff, Keene, New Hampshire; (25) One box of assorted chillums, seized from Phat Stuff, Keene, New Hampshire; (26) One box of assorted carburetor pipes and a carburetor mask, seized from Phat Stuff, Keene, New Hampshire; (27) One lot of two boxes of assorted ceramic pipes, seized from Phat Stuff, Keene, New Hampshire; (28) One box of containers of 420 cleaner, seized from Phat Stuff, Keene, New Hampshire; and (29) One box of assorted carburetor masks, seized from Phat Stuff, Keene, New Hampshire.  The defendants *in rem* are currently in the custody of the United States Marshals Service and the Drug Enforcement Administration.

## **FACTS**

1.  The term "drug paraphernalia" is described in Title 21, United States Code,  §863(d) as:

> [A]ny equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful . . .  It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, methamphetamine, or amphetamines into the human body.

2.  Section 863(d)(1) of the statute identifies certain items that are considered, per se, to be drug paraphernalia, such as: metal, . . . glass, . . .  plastic or ceramic pipes; water pipes; . . . chillums; and bongs.  In addition, 21 U.S.C. § 863(e) provides, in relevant part:

In determining whether an item constitutes drug paraphernalia, in addition to other logically relevant factors, the following may be considered:

(1) instructions, oral or written, provided with the item . . . ;

(4) the manner in which the item is displayed for sale . . . ;

(5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products. . . ; (6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise; and (7) the existence and scope of the legitimate use of the item in the community.

**Controlled Substance Analogues**

3.   In 1986, Congress amended the Controlled Substances Act, 21 U.S.C. §§801-971, by establishing federal prohibitions against drug trafficking in controlled substance analogues. Enacted as part of the Anti-Drug Abuse Act of 1986, the Controlled Substance Analogue Enforcement Act of 1986, (CSAEA or Analogue Act) was designed to address underground chemists who tinker with the molecular structure of controlled substances to create new drugs that are not scheduled.  Such new drugs are referred to as controlled substance analogues.

4.   Prior to the CSAEA, unlawful conduct with regard to drug trafficking was tied to precise chemical definitions, and law enforcement authorities had long found themselves at least one step behind drug dealers who possess certain rudimentary scientific abilities.  New designer drugs are often created as alternatives to known illegal drugs precisely because they may be sold with an appearance of legality.  Unable to keep its controlled substance schedules current in the face of accelerating innovations in drug technology, Congress enacted the Analogue Provision to

target distribution of just such substances.  The Analogue Act does not specifically list the chemicals and substances that are controlled substance analogues.

    5.  Under the CSAEA, a controlled substance analogue is a substance:

        i.  the chemical structure of which is substantially similar to the chemical structure of a controlled substance in Schedule I or II;

        ii.  which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in Schedule I or II; or

        iii.  with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in Schedule I or II.

21 U.S.C. § 802(32)(A).

    6.  A substance that satisfies this definition is, to the extent intended for human consumption, treated for the purposes of federal law as a Schedule I controlled substance.  21 U.S.C. § 813.

**Temporary Scheduling of Synthetic Cannabinoids by DEA**

    7.  On February 10, 2014, the Administrator of the Drug Enforcement Administration issued a final order to temporarily schedule four synthetic cannabinoids into Schedule I pursuant to the temporary scheduling provisions of the Controlled Substances Act (CSA). The substances are: quinolin-8-yl 1-pentyl-1H-indole-3-carboxylate (PB- 22; QUPIC); quinolin-8-yl 1-(5-

fluoropentyl)-1H-indole-3-carboxylate (5-fluoro-PB-22; 5F-PB-22); N-(1-amino-3-methyl-1-

oxobutan-2-yl)-1-(4- fluorobenzyl)-1H-indazole-3-carboxamide (AB-FUBINACA); and N-(1-

amino- 3,3-dimethyl-1-oxobutan-2-yl)-1-pentyl-1H-indazole-3-carboxamide (ADB- PINACA).

This action is based on a finding by the Deputy Administrator that the placement of these

synthetic cannabinoids into Schedule I of the CSA is necessary to avoid an imminent hazard to

the public safety. Any final order will impose the administrative, civil, and criminal sanctions

and regulatory controls applicable to Schedule I substances under the CSA on the manufacture,

distribution, possession, importation, exportation, research, and conduct of instructional activities

of these synthetic cannabinoids.

**Synthetic Cannabinoids**

8. In recent years, individuals have begun to manufacture and traffic in smokable

synthetic cannabinoid (SSC) products, known on the street as "Spice" or "K2," which are the two

past popular brand names for these products. SSC products are a mixture of an organic "carrier"

medium, such as the herb-like substance Damiana, which is then typically sprayed or mixed with

a synthetic compound chemically similar to THC (tetrahydrocannabinol), the psychoactive

ingredient in marijuana. Currently, there are hundreds of synthetic cannabinoid compounds. The

original five most common of these compounds, JWH-018; JWH-073; JWH-200; CP-47, 497 C8

homologue; and CP-47, 497 cannabicyclohexanol, were "emergency scheduled" by the DEA in

March 2011. On July 9, 2012, Public Law 112-144 was signed into law, permanently adding

these compounds to Schedule I of the Controlled Substances Act.

9. In response, clandestine manufacturers and traffickers began distributing smokable

synthetic cannabinoid products containing slightly varied synthetic cannabinoid compounds in an

attempt to circumvent newly enacted federal and state laws. Smokable synthetic cannabinoid

products are commonly purchased in head shops, tobacco shops, gas stations, convenience stores, adult stores and over the Internet.  They are often marketed as incense or "fake weed", and almost always carry the markings "not for human consumption."  These markings are routinely in place in an attempt to circumvent the product being identified as a controlled substance analogue of the newly controlled synthetic cannabinoids, as well as to avoid being classified as a drug, and therefore subject to the federal Food and Drug Administration (FDA) testing and approval process.  Users of these products have reported effects similar to marijuana, but many times greater, to include but not limited to paranoia, panic attacks, increased heart rate and increased blood pressure.  In some cases, use of these smokable synthetic cannabinoids has led to serious psychotic hallucinations, some of which can last for days.  It also appears that these products may be stored in the body for long periods of time, and therefore the long-term effects on the human body are not fully known.  Manufacturers of this product are not regulated and are often unknown, since these products are purchased via the internet whether wholesale or retail.  "Spice" is typically sold in 1.5 gram and 5 gram quantities, and costs approximately $20.00 per 1.5 grams, and up to $50.00 per 5 gram quantity, depending on the listed strength.

**Quinolin-8-yl 1-pentyl-1H-indole-3-carboxylate (PB-22)**

10.  The DEA, Drug and Chemical Evaluation Section, has determined that PB-22 shares chemical structural similarities with the Schedule I substance, 1-pentyl-3(1-naphthoyl)indole (JWH–018).  DEA has also determined that based on the structure activity relations, PB-22 is likely to share substantial pharmacological effects similarity with Schedule I substance, 1-pentyl-3-(1-naphthoyl)indole (JWH–018).

11.  On February 10, 2014, the Administrator of the Drug Enforcement Administration issued a final order to temporarily schedule PB-22 into Schedule I.

**Case Background**

12.   According to records from the New Hampshire Secretary of State, Phat Stuff is a trade name that has been registered for a business operating at 84 Main Street in Keene, New Hampshire listing the owners as Panos and Katie Eliopoulos of Winchester, New Hampshire since November 2011.  Additionally, an open search of the Internet uncovered a Facebook page for Phat Stuff, which stated that the business was located at 84 Main Street, Keene, New Hampshire.

13.   In July 2013, DEA received information that drug paraphernalia and SSC's were being sold from Phat Stuff.  In August 2013, a law enforcement officer, acting in an undercover capacity, entered Phat Stuff.  Inside the store, there were numerous glass display cases, some of which contained glass pipes and bongs that are associated with the ingestion of controlled substances.  The officer saw another glass case that cases displayed numerous foil-type packages that were believed to contain synthetic cannabinoids.  One young male employee was behind the cash register. The officer did not see any tobacco or tobacco products in Phat Stuff.

**Distributions from Phat Stuff**

14.   On August 9, 2013, a cooperating witness (CW), under the observation of agents, entered Phat Stuff.  The CW left the store a short time later with four foil packets labeled "Griffon, scented deodorizer, melon berry, not for consumption," and also with a small glass pipe.  The CW told law enforcement agents that he entered the store and asked the employee for "Dreaded," a brand of suspected SSC.  The employee told the CW that they no longer carried "Dreaded" and then showed the CW a product called "Griffon."  The CW asked what the employee thought of the product, and the employee replied that he liked it.  The CW asked for three packets of the Griffon, and then said that he needed a pipe, also.  The CW selected a small

glass pipe and purchased it for $28. The CW selected a fourth packet of Griffon and purchased

them for $99.97. The CW saw the employee place the money in the cash register. The

substances purchased on this date were sent to a DEA Laboratory, which determined that the

substances contained in the packages labeled "Griffon" contained quinolin-8-yl 1-pentyl-1H-

indole-3-carboxylate (PB- 22; QUPIC). At the time of this transaction, DEA scientists

determined that PB-22 was an analogue of JWH-018, a Schedule I controlled substance. PB-22

was temporarily placed into Schedule I on February 10, 2014, after the date of this transaction.

15. On September 27, 2013, under the observation of agents, the CW again entered Phat

Stuff. A short time later, the CW exited the store with a glass pipe. The CW told the officers

that he had asked the employee for "Dreaded." The employee had told the CW that they no

longer carried that product due to a Keene city ordinance banning its sale. The CW then told the

employee that he needed to purchase a pipe, because the police took his. The CW then selected a

glass pipe and a padded carrying case, and bought them both for $55. The CW saw the

employee place the money in the cash register.

16. All of the meetings with the CW were recorded and observed by law enforcement.

The CW was searched before and after each transaction and found not to be in possession of any

contraband or money. In addition, all of the currency used to purchase substances was provided

by the government and had its serial numbers recorded.

17. On April 17, 2014, while acting in an undercover capacity, an officer entered Phat

Stuff and told the employee that he was looking for a pipe. The employee asked, "glass, metal,

or wood?" The officer responded "glass," and the male directed him to a display case. The

officer selected a pipe and a bottle labeled "Rescue Detox Ice, Instant Cleansing Energy," and

purchased them for $65. Products labeled as "detox" are often used by drug users in an attempt

11

to flush drugs from their bodies in order to pass drug tests.  The officer saw the employee put the money in the cash register.

18.  Also on April 17, 2014, while acting in an undercover capacity, another officer entered Phat Stuff.  The employee asked him what he was looking for.  The officer said that he wanted a "small chillum."  The employee showed the officer a glass display case.  The officer asked him if the case contained chillums and he replied, "yeah."  The officer selected one and then asked if the pipes were made in the store.  The employee replied that they were, and that the owner made them in the in-store studio.  The employee also said that the owner mostly made "bubblers, and Sherlocks."  Bubblers and Sherlocks are designs of pipes commonly used to ingest marijuana. The officer then asked for a cleaning product for the pipe.  The employee showed him a bottle of liquid cleaner labeled "420," which the officer selected and continued to browse the store.  "420" is a term used to refer to marijuana.   As the officer looked at a display case containing several glass bongs, he asked the employee if the owner made any of the displayed bongs.  The employee referred to them as "water pipes," and said that the owner didn't make them, because a glass lathe was needed to produce the long necks of the bongs, and that such a lathe cost several thousand dollars.  The officer also observed a glass display case containing numerous types of diversion safes.   Diversion safes are objects made to look like everyday items, such as aerosol cans, books or drink bottles, that have a hidden compartment (e.g., in the bottom) where small valuable articles can be hidden.  Upon reaching the cash register, the officer saw a product marketed as a pill safe that was designed to look like a car cigarette lighter.  However, the lighter opened to reveal a cavity in which pills could be stored. The officer purchased the chillum, "420" cleaner, and pill safe for $32.98, and saw the employee put the money in the cash register.

19.  As part of this investigation, the business bank accounts of Phat Stuff, as well as the personal bank accounts of Panagiotes and Katie Eliopoulos were subpoenaed and reviewed. The business bank accounts in the name of Phat Stuff are TD Bank Checking account no. 9240737655 and TD Bank Checking account no. 9244068759.  The personal bank account is a TD Bank Holiday Club savings account no. 9734334339, in the name of Panagiotes Eliopoulos.

20.  The business bank account statements for 2013 revealed that most of Phat Stuff's expenditures for inventory were payments to vendors of glass drug paraphernalia and synthetic cannabinoids.  Approximately 2.5% of the business expenditures were for a magazine inventory.

21.  During 2013, Phat Stuff's business accounts had total deposits of approximately $1 million. From May 2013 to May 2014, Eliopoulos transferred $107,200 from Phat Stuff's TD Bank Checking account no. 9240737655 to his personal TD Bank Holiday Club Savings account no. 9734334339.  Eliopoulos has made frequent cash withdrawals from the latter account, including over $20,000 in April 2014.  As of May 2, 2014, TD Bank Holiday Club Savings Acct. no. 9734334339 had a balance of $6,996.00.

22.  According to the April 2014 bank statement, Phat Stuff's TD Bank Checking account no. 9240737655 had an average daily balance of $1395.46.   According to the April 2014 bank statement for Phat Stuff TD Bank Checking account no. 9244068759, the account had deposits of $1,300 and payments of $1202.94, not including bank fees.  The account had a closing balance of $44.90, as of April 3, 2014.

23.  Eliopoulos used the Phat Stuff TD Bank Checking account no. 9240737655 to fund payments to Ford Credit for a 2011 Ford F 250, VIN #1FT7W2B68BEA60933,  NH Reg. No.

2977098.  In 2013, Eliopoulos made $5,482.15 in payments to Ford Credit from this account.

Accordingly, the 2011 Ford F 250 is traceable to violations of Title 21.

24.  On May 7, 2014, law enforcement agents executed federal search and seizure

warrants at both Phat Stuff, and TD Bank in Keene, New Hampshire, and seized defendants *in*

*rem* (1) though (29).

## FIRST CLAIM FOR FORFEITURE

25.  The allegations contained in paragraphs 1 through 24 of this Verified Complaint for

Forfeiture *in rem* are incorporated by reference.

26.  Title 21, U.S.C. § 881(a)(6) subjects to forfeiture "all moneys … or other things of

value furnished or intended to be furnished by any person in exchange for a controlled substance

or … all proceeds traceable to such an exchange and all moneys … used or intended to be used

to facilitate any violation of" the Controlled Substances Act.

27.  The defendants *in rem* (1) Six Hundred Ninety Five Dollars ($695.00) in U.S.

Currency, more or less, seized from Phat Stuff, Keene, New Hampshire; (2) Funds in the amount

of $3,737.23, seized from TD Bank Business Core Checking Account No. 9240737655, in the

name of Phat Stuff; (3) Funds in the amount of $906.78, seized from TD Bank Business

Convenience Checking  Account No. 9244068759, in the name of Phat Stuff; (4) Funds in the

amount of $9,871.00, seized from TD Bank Savings Account No. 9734334339, in the name of

Panagiotes J. Eliopoulos; and (5) One 2011 Ford F 250, NH Registration #2977098,

Vin #1FT7W2B68BEA60933, registered to Panagiotes and Katie Eliopoulos, were furnished or

intended to be furnished in exchange for a controlled substance, in violation of the Controlled

Substances Act, 21 U.S.C. § 801, et seq., or represent proceeds traceable to such exchanges, or

money used or intended to be used to facilitate violations of the Act.

28.  As a result, the defendants *in rem* (1) through (5) are liable for condemnation and forfeiture to the United States for its use in accordance with 21 U.S.C. § 881(a)(6).

### SECOND CLAIM FOR FORFEITURE

29.  The allegations contained in paragraphs 1 through 24 of this Verified Complaint for Forfeiture in Rem are incorporated by reference.

30.  Title 21, U.S.C. § 881(a)(10) subjects to forfeiture "any drug paraphernalia" as "[a]ny equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful… ."

31.  The defendants *in rem* (6) One lot of forty two boxes of assorted glass bongs, seized from Phat Stuff, Keene, New Hampshire; (7) One lot of twelve boxes of assorted glass water pipes, seized from Phat Stuff, Keene, New Hampshire; (8) One lot of twenty one boxes of assorted glass carburetor pipes, seized from Phat Stuff, Keene, New Hampshire; (9) One box of assorted carburetor pipes, seized from Phat Stuff, Keene, New Hampshire; (10) One lot of four boxes of assorted glass pipes, seized from Phat Stuff, Keene, New Hampshire; (11) One box of assorted grinders, with screens, seized from Phat Stuff, Keene, New Hampshire; (12) One lot of two boxes of assorted rolling papers, seized from Phat Stuff, Keene, New Hampshire; (13) One lot of four boxes of assorted grinders, seized from Phat Stuff, Keene, New Hampshire; (14) One lot of four boxes of assorted glassware, seized from Phat Stuff, Keene, New Hampshire; (15) One lot of fifteen boxes of assorted hookah pipes, seized from Phat Stuff, Keene, New Hampshire; (16) One lot of two boxes of assorted vaporizers, seized from Phat Stuff, Keene, New Hampshire; (17) One box of assorted diversion safes, seized from Phat Stuff, Keene, New

Hampshire; (18) One box of assorted pipes and digital scales, seized from Phat Stuff, Keene, New Hampshire; (19) One box of assorted glass pipes and metal chamber pipes, seized from Phat Stuff, Keene, New Hampshire; (20) One box of assorted diversion hides and stone pipes seized from Phat Stuff, Keene, New Hampshire; (21) One box of assorted glass mouth pieces, seized from Phat Stuff, Keene, New Hampshire; (22) One box of assorted glass mouth pieces, glassware, and electronic cigarettes, seized from Phat Stuff, Keene, New Hampshire; (23) One box of assorted ceramic bongs, seized from Phat Stuff, Keene, New Hampshire; (24) One box of assorted glass chillums, seized from Phat Stuff, Keene, New Hampshire; (25) One box of assorted chillums, seized from Phat Stuff, Keene, New Hampshire; (26) One box of assorted carburetor pipes and a carburetor mask, seized from Phat Stuff, Keene, New Hampshire; (27) One lot of two boxes of assorted ceramic pipes, seized from Phat Stuff, Keene, New Hampshire; (28) One box of containers of 420 cleaner, seized from Phat Stuff, Keene, New Hampshire; and (29) One box of assorted carburetor masks, seized from Phat Stuff, Keene, New Hampshire, are drug paraphernalia which were used or intended to be used, for manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, et seq.

31.  As a result, the defendants *in rem* (6)-(29) are liable to condemnation and forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(10).

Therefore, the United States requests that:

(a)      the Court issue a Warrant of Arrest *in Rem* in the form submitted with this Verified Complaint to the United States Marshals Service or any duly authorized federal law enforcement agency commanding him/them to arrest the defendants *in rem*;

16

(b)      this matter be scheduled for a jury trial;

(c)      judgment of forfeiture be decreed against the defendants *in rem*;

(d)      the defendants *in rem* be disposed of according to law; and,

(e)      this Court grant the United States of America its costs and whatever other relief to

which it may be entitled.

Respectfully submitted,

JOHN P. KACAVAS
United States Attorney


Dated:  July 3, 2014                    By: /s/ Robert J. Rabuck
                                        Robert J. Rabuck
                                        NH Bar No. 2087
                                        Assistant U.S. Attorney
                                        District of New Hampshire
                                        53 Pleasant Street
                                        Concord, New Hampshire
                                        603-225-1552
                                        rob.rabuck@usdoj.gov

**VERIFICATION**

I, Todd Prough, being duly sworn, depose and say that I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA), and as such have responsibility for the within action, that I have read the contents of the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents therein, and that the same is true to the best of my knowledge, information and belief.

The sources of my information and the grounds of my belief are official records and files of the United States and the State of New Hampshire, and information obtained by me and other law enforcement officers during an investigation of alleged violation of the laws of the United States.


/s/Todd Prough
Todd Prough


STATE OF NEW HAMPSHIRE
COUNTY OF MERRIMACK

Subscribed and sworn to before me this 3rd day of July, 2014.


/s/ Kimberly C. Cooper
Kimberly C. Cooper
Notary Public

My commission expires:  September 22, 2015